**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **CHAD LIGHTFOOT** | **CIVIL ACTION NO. 22-1080** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **GARY GILLEY, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Chad Lightfoot, a prisoner at FCI Pollock Medium proceeding pro se, filed this proceeding on approximately April 18, 2022, under 42 U.S.C. § 1983. He names the following defendants in their individual and official capacities: Sheriff Gary Gilley, Secretary James LeBlanc, Warden Patricia Miller, Chief of Security John Doe, Lieutenant Big Show, Deputy Austin, and Deputy Marvel.[1] [doc. # 20, pp. 3, 10-12]. For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff arrived at Richland Parish Detention Center ("RPDC") in June 2020. [doc. # 20, p. 12]. He first claims that without providing him pre- or post-deprivation procedural due process, Defendants Marvel, Austin, Show, Doe, Miller, Gilley, and LeBlanc confiscated his personal property, including an MP4 player, SD cards, cash, postal stamps, jeans, shoes, legal books, hair clippers, and legal documents. [doc. #s 20, pp. 15-16, 19, 26, 31; 25, p. 1]. Plaintiff maintains that he "never received a disciplinary hearing and or seizure hearing . . . ." *Id.* at 21.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

His property was thereafter lost or stolen because it was not safely secured or maintained. [doc. # 25, pp. 3, 4]. He "was never made aware of any written policy or custom authorizing the defendants to seize his property[.]" *Id.* at 7.

Plaintiff also frames his allegations above as an equal protection claim, alleging that inmates at facilities operated by the Louisiana Department of Corrections receive procedural due process with respect to deprivations of property, but inmates at "parish jails governed by local elected parish sheriffs" do not. [doc. #s 20, pp. 21-22, 24-25, 31; 25, p. 4].

Plaintiff claims that Defendants Marvel, Austin, Show, and Doe conspired to issue him two disciplinary reports,[2] falsely charge him with contraband, and withhold procedural due process. [doc. # 20, pp. 19, 33]. Plaintiff claims that he "was placed in administrative segregation for approximately (10) to (15) days without a pre or post-deprivation hearing." [doc. # 25, p. 6]. He explains that officers found the alleged contraband in Bed 11, but he was assigned to the bed beneath Bed 11. [doc. # 20, p. 18]. The disciplinary reports were placed in his "Master Prison File." *Id.* at 19-20. Plaintiff "was never convicted of any of the disciplinary charges . . . as [he] never appeared before a Prison Disciplinary Board of any kind." [doc. # 25, pp. 6-7]. He maintains that on January 10, 2023, a parole board used the "false reports" to deny him parole; the reports "were the Parole Board's sole reason for denying" parole. *Id.* at 21, 32. On March 15, 2023, a state judge vacated the conviction associated with Plaintiff's parole request. [doc. # 25, p. 7].

Plaintiff claims that he was denied equal protection when he was refused participation in a vocational program at Delta Community College. [doc. # 20, pp. 24-25]. Plaintiff, an

---

[2] Plaintiff also states that he received unusual occurrence reports. *Id.* at 21.

"African-American citizen," maintains that two "Caucasian" inmates who participated in the same vocational program were allowed back in the program even though they received "the same or similar disciplinary infractions." *Id.* at 25, 32. One was caught smoking tobacco,[3] and the other "got into a fight." *Id.* at 25. Plaintiff "did not even appear before a disciplinary board and fully cooperated with prison administrators regarding the contraband incident, yet [he] was expelled from the vocational program . . . ." *Id.* at 25.

Plaintiff also frames his removal from the vocational program as a retaliation claim, faulting Warden Miller and John Doe. [doc. #s 20, p. 32; 25, p. 2].

Plaintiff claims that on April 23, 2021, Warden Miller and Defendant John Doe retaliated by transferring him from RPDC to Concordia Parish Correctional Center ("CPCC"). [doc. #s 20, p. 25; 25, p. 2]. The defendants allegedly transferred him "to prevent him from filing a grievance or possibly this action." [doc. # 20, p. 26]. He adds that the defendants did not allow him to "check and or inventory the property that had been seized and or confiscated from him . . . ." *Id.* at 25. He also claims that Miller and Doe retaliated by transferring him "without access to his prison account," which he needed to purchase stamps and supplies to communicate with his co-counsel and file grievances. [doc. # 25, p. 3].

When Plaintiff arrived at CPCC, he lacked the items which were confiscated from him at RPDC, as well as other "important legal documents [he] needed for" a state court criminal proceeding. *Id.* at 27-28. A state judge in the criminal proceeding later ordered Warden Miller to "search for and locate, and if found, to deliver" Plaintiff's missing legal materials. *Id.* at 29. Faulting Defendants Marvel, Austin, Show, Doe, and Miller, Plaintiff claims that the earlier confiscation of his stamps prevented him from communicating with his co-counsel, the courts,

---

[3] Plaintiff states that tobacco was contraband. [doc. # 20, p. 25].

other legal agencies, friends, and family.  [doc. #s 20, p. 29; 25, pp. 1-2, 3].  He claims that the confiscation of his MP4 player prevented him from reviewing important audio evidence "submitted by the State of Louisiana."  [doc. # 20, p. 29].  He also claims that he missed three court dates because Defendants Doe, Show, and Marvel confiscated his legal materials and personal property.  *Id.* at 30.  He was unable to "properly litigate existing criminal and civil matters where [he] suffered several adverse rulings."  [doc. # 5, p. 2].

Plaintiff claims that Secretary LeBlanc ignores inmates' complaints.  *Id.* at 22.  He relatedly claims that Defendants Gilley and Miller either failed to train staff to answer grievances or created an "unspoken rule or custom to purposely ignore any and all inmate grievances . . . ."  *Id.* at 34, 35.

Plaintiff states that he is filing this action "on behalf of himself and any and all those similarly situated . . . ."  [doc. # 20, p. 4].  He also requests "class certification," seeking to represent a class of allegedly similarly situated prisoners.  *Id.* at 8, 10-11, 35-36.

Plaintiff claims that Defendants Miller, Gilley, and LeBlanc "acted with negligence and or fraud" in violation of state law by "failing to properly supervise and or train their employees to": not write false and/or misleading disciplinary reports, secure inmates' seized property to prevent loss, afford inmates procedural due process, not act with malice and/or discrimination, know when to file a disciplinary report in an inmate's master prison file, and know when and how to seize an inmate's property.  [doc. # 25, pp. 5-6].

Plaintiff states that he suffered the following injuries: loss of sleep, anxiety, mental pain and suffering, physical pain and suffering, and aggravation of his existing mental disabilities.  [doc. # 25, p. 6].

For relief, Plaintiff seeks: (1) to enjoin defendants from denying "adequate pre and or

post deprivation hearings upon the seizure or confiscation of inmates' property, including, but not limited to the administrative remedy process, lost property claims, or disciplinary hearings"; (2) to enjoin defendants not to treat RPDC inmates differently than "other Louisiana Department of Corrections inmates being housed at Department of Corrections facilities"; (3) declaratory relief; (4) nominal damages; (5) punitive damages; and (6) compensatory damages.  [doc. # 20, pp. 36-39].

## Law and Analysis

### 1. Preliminary Screening

As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4]  *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Section 1915A(b) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).  A district court may dismiss a prisoner's civil rights

complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. *Parratt-Hudson* Doctrine

Plaintiff claims that without providing him pre- or post-deprivation procedural due process, Defendants Marvel, Austin, Show, Doe, Miller, Gilley, and LeBlanc confiscated his personal property. [doc. #s 20, pp. 15-16, 19, 26, 31; 25, p. 1]. His property was thereafter lost or stolen because it was not safely secured or maintained. [doc. # 25, pp. 3, 4].

The *Parratt-Hudson* doctrine forecloses these claims. A post-deprivation tort cause of action in state law is, under the *Parratt/Hudson*[5] doctrine, sufficient to satisfy the requirements of due process when a plaintiff alleges that he has been deprived of his property, without due process of law, by the negligent or intentional actions of a state officer that are "random and unauthorized."[6] *Sheppard v. Louisiana Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989) (*quoting Hudson*, 468 U.S. at 533-35). Louisiana law provides an adequate remedy for both

---

[5] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986).

[6] "The doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)." *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

intentional and negligent deprivations of property. *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) (*citing* Louisiana Civil Code Article 2315 and observing that "Louisiana law affords an opportunity to redress intentional torts under the same section of the Code by which negligence is remedied."); *Fuller v. XTO Energy, Inc.*, 989 So. 2d 298, 302 (La. Ct. App. 2008) (recognizing the tort of conversion).

Here, Plaintiff states that he "was never made aware of any written policy or custom authorizing the defendants to seize his property[.]"  [doc. # 25, p. 7].  He does not allege that he was deprived of property by anyone acting under an official policy, custom, or procedure; rather, he describes random and unauthorized action.  *See White v. Epps*, 411 F. App'x 731, 733 (5th Cir. 2011) ("White's chief allegation is that certain prison officials maliciously destroyed his property in contravention of prison policy.  That brings his case directly within the *Parratt*/*Hudson* rubric."); *Allen v. Fuselier*, 273 F.3d 393 (5th Cir. 2001) (*citing Parratt* and concluding, "Allen's assertion that the defendants improperly removed $75 from his inmate account is frivolous because the existence of a postdeprivation tort cause of action in [Louisiana] law is sufficient to satisfy the requirements of due process.").

Plaintiff should, if he wishes, pursue relief under state law in state court because Louisiana law provides adequate remedies for this alleged conduct.  Accordingly, the Court should dismiss these claims.

**3. Equal Protection**

To establish an equal protection claim, a plaintiff must allege that defendants treated "two

or more classifications of similarly situated persons" differently.[7]  *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (*quoting Gallegos–Hernandez v. U.S.*, 688 F.3d 190, 195 (5th Cir. 2012)).  "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply."  *Id.*  "Strict scrutiny is required if the [] classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution."  *Id.* at 354 (*quoting Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)).  "If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose."  *Id.*  "Under rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Hines v. Aldredge*, 783 F.3d 197, 202-03 (5th Cir. 2015) (internal quotation marks omitted) (*quoting Madriz–Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004)).

### A. Deprivation of Property

Plaintiff frames his allegations concerning the deprivation of his property as an equal protection claim, alleging that inmates at facilities operated by the Louisiana Department of Corrections receive procedural due process with respect to deprivations of property, but inmates at "parish jails governed by local elected parish sheriffs" do not.  [doc. #s 20, pp. 21-22, 24-25, 31; 25, p. 4].

---

[7] "[T]here is no precise formula to determine whether an individual is similarly situated to comparators."  *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012) (internal quotation marks and quoted source omitted).  "The inquiry is case-specific and requires [courts] to consider the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision."  *Id.*

Plaintiff, however, does not establish the 'threshold element' of an equal protection claim, failing to plausibly allege that defendants *treated* "two or more classifications of similarly situated persons" differently.  He alleges that Defendants Marvel, Austin, Show, Doe, Miller, and Gilley failed to provide him with the same procedural due process that inmates receive in facilities operated by the Louisiana Department of Public Safety and Corrections ("LDPSC"). However, he does not allege that any of these defendants "treated" LDPSC inmates at all because he does not allege that the defendants had control or authority over inmates in LDPSC facilities. Similarly, he names Secretary James LeBlanc as a defendant, but he does not allege that LeBlanc "treated" inmates at RPDC at all because he does not allege that LeBlanc had control or authority over inmates at RPDC.[8]  He states, rather, that officials at RPDC failed to afford him procedural due process.  He states further that Sheriff Gilley controls and governs RPDC.  *See Bisby v. Crites*, 312 F. App'x 631, 632 (5th Cir. 2009) ("Bisby does not indicate how prisoners in other state systems and the federal system are similarly situated to Texas prisoners, nor does he indicate how Texas prisoners are singled out by Texas authorities for treatment different from prisoners in other states and the federal system."); *Rivera v. Senkowski*, 62 F.3d 80, 84 (2d Cir. 1995) (concluding that because the defendants lacked "power over the development, operation, or enforcement of limited-privileges programs at other facilities in the New York system[,] . . . they did not have the power to discriminate against Rivera vis-à-vis similarly situated inmates at those facilities.").[9]

---

[8] LA. REV. STAT. § 15:704 ("Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders.").

[9] *See also Hampton v. Brown*, 2012 WL 1491914, at *13 (W.D. La. Mar. 5, 2012), *report and recommendation adopted*, 2012 WL 1491903 (W.D. La. Apr. 26, 2012), *aff'd,* 544 F. App'x 416 (5th Cir. 2013) ("[T]here is no evidence that the named defendants exercise authority over the

The Court should dismiss these claims.

## B. Vocational Classes

Plaintiff claims that he was denied equal protection when he was refused participation in a vocational program at Delta Community College.  [doc. # 20, pp. 24-25].  Plaintiff, an "African-American citizen," maintains that two "Caucasian" inmates who participated in the same vocational program were allowed back in the program even though they received "the same or similar disciplinary infractions."  *Id.* at 25, 32.  One was caught smoking tobacco,[10] and the other "got into a fight."  *Id.* at 25.  Plaintiff "did not even appear before a disciplinary board and fully cooperated with prison administrators regarding the contraband incident, yet [he] was expelled from the vocational program . . . ."  *Id.* at 25.

Plaintiff does not plausibly allege that the other inmates were similarly situated.  While he formulaically alleges that they were similarly situated, he does not offer enough specific facts to support his claim.  At best, he presents two comparators who were allowed to return to the vocational program.  But he does not, for instance, explain whether the others were housed in the same location, had similar sentences, or shared his status in the facility (for instance, trustee vs.

---

opportunities available to inmates housed at other LDOC facilities; thus, there is no evidence that *they* created two or more classifications of similarly situated individuals who were treated differently."); *Runnels v. Banks*, 2012 WL 2839802, at *1 (S.D. Miss. July 10, 2012) (rejecting an equal protection claim concerning disparate treatment of inmates from different states or inmates incarcerated in the federal system); *Oladipupo v. Austin*, 104 F. Supp. 2d 643, 650-51 (W.D. La. 2000) ("[T]he gravamen of Foster's equal protection claim is that he and INS detainees held at APJ enjoy fewer privileges than those enjoyed by prisoners detained at Oakdale Federal Detention Center.  As a matter of law, plaintiff has failed to allege that defendants created two or more classifications of similarly situated individuals that were treated differently."); *Collins v. Schubert*, 2019 WL 7168103, at *3 (S.D. Tex. Dec. 23, 2019) (concluding, where a plaintiff claimed that a kitchen captain treated inmates in the plaintiff's unit differently than inmates in other units, that the plaintiff failed to state a claim because the kitchen captain lacked authority over other units).

[10] Plaintiff states that tobacco was contraband.  [doc. # 20, p. 25].

non-trustee), his work history, his affiliations (if any), his criminal history, his behavioral history, his institutional history, or any other factors that prison officials, in their discretion, could consider in rendering a decision.[11, 12]

The Court should dismiss this claim.

### 4. Procedural Due Process for Disciplinary Charges

Plaintiff claims that Defendants Marvel, Austin, Show, and Doe conspired to issue him two disciplinary reports, falsely charge him with contraband, and withhold procedural due process. [doc. # 20, pp. 19, 33]. He "was placed in administrative segregation for approximately (10) to (15) days without a pre or post-deprivation hearing." [doc. # 25, p. 6]. The disciplinary reports were placed in his "Master Prison File." [doc. # 20, pp. 19-20]. Plaintiff "was never convicted of any of the disciplinary charges . . . as [he] never appeared before a Prison

---

[11] *See Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D. Pa.), aff'd, 696 F.2d 985 (3d Cir. 1982) ("[N]o two prisoners, being different human beings, will possess identical backgrounds and characters. Indeed, it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics."); *Stevenson v. Louisiana Board of Parole*, 265 F.3d 1060 (5th Cir. 2001) ("Although [the plaintiff] asserts that the other prisoners who were eligible . . . were similarly situated to him, Stevenson has not demonstrated that their criminal records and offenses were sufficiently similar to his circumstances . . . [and it] is also obvious that the discretionary decision to grant parole must be made on a case-by-case basis based on the unique circumstances of each prisoner."); *Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008) (noting that prison officials may use segregated confinement "simply because the prison has no other space, wishes to protect some prisoners from others, wishes to keep prisoners isolated from one another in order to minimize the risk of riots or other disturbances, wishes to prevent the spread of disease, and so forth.") (*quoting Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997)).

[12] *See Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) ("Rountree's equal-protection claim fails because he did not sufficiently allege that he has been treated differently from others similarly situated. His complaint generally alleges that other similarly situated individuals were treated differently, but he points to no specific person or persons and provides no specifics as to their violations.").

Disciplinary Board of any kind." [doc. # 25, pp. 6-7]. He maintains that on January 10, 2023, a parole board used the "false reports" to deny him parole; the reports "were the Parole Board's sole reason for denying" parole. *Id.* at 21, 32.

"'Inmates have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). "'[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (*quoting Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."). "In other words, segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)).[13]

The Court must examine whether Plaintiff's punishment constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life, such that a liberty interest in avoiding the deprivation arises." *Wilkerson*, 774 F.3d at 853 (internal quotation marks and quoted source omitted). "In deciding whether changes to an inmate's conditions of

---

[13] "Extraordinary circumstances" and "without more" are simply "alternative statements of the *Sandin* test: administrative segregation 'without more' or 'absent extraordinary circumstances' is administrative segregation that is merely incident to ordinary prison life, and is not an 'atypical and significant hardship' under *Sandin*." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

confinement implicate a cognizable liberty interest, both *Sandin* and [*Wilkinson*] considered the *nature* of the more-restrictive confinement and its *duration* in relation to prison norms and to the terms of the individual's sentence." *Id.* (emphasis added). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (*cited with approval by Wilkerson*, 774 F.3d at 854). "In essence, courts employ a sliding scale, taking into account how bad the conditions are and how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.* Courts "consider the severity of the restrictive conditions and their duration when deciding whether a prisoner has a liberty interest in his custodial classification." *Carmouche v. Hooper*, 2023 WL 5116377, at *2 (5th Cir. Aug. 10, 2023).

### A. Denied Parole

The alleged collateral result—denied parole—of the alleged false disciplinary charge and reports did not implicate a protected liberty interest; thus, Plaintiff does not state a plausible claim. *See Carter v. Brown*, 772 F. App'x 67, 68 (5th Cir. 2019) (finding, where the plaintiff argued "that he was falsely charged and convicted at a hearing that violated established procedures, [and] relied on false evidence," that the plaintiff did not allege "a due process violation" because his punishment did not "implicate a  protected liberty interest[.]"); *Lasater v. Herrera*, 729 F. App'x 362, 363 (5th Cir. 2018) (finding, where the plaintiff alleged that prison officials drafted a false disciplinary report and violated his due process rights by destroying the

physical evidence, that the plaintiff's rights were not violated because his punishment was not atypical).

In *Young v. LeBlanc*, 2022 WL 2072861, at *4 (5th Cir. June 9, 2022), the plaintiff claimed "that his confinement in lockdown [] delayed his consideration for parole . . . [b]ecause he [was] unable to attend parole hearings." Denying the claim, the Fifth Circuit opined that the plaintiff could not "have a constitutionally protected interest in parole consideration—even if the statute gives him such a right—because he has no statutory interest in parole *release*." *Id.* The court explained:

> Young has not identified a statutory right to early release. "Louisiana parole statutes do not create an expectancy of release or [a] liberty interest in general." *Bosworth v. Whitley*, 627 So. 2d 629, 633 (La. 1993). That deficiency is fatal to Young's claim. "[W]hen a prisoner has no liberty interest in obtaining parole[,] he cannot complain of the constitutionality of procedural devices attendant to parole decisions." *Wansley v. Miss. Dep't of Corr.*, 769 F.3d 309, 312–13 (5th Cir. 2014) (quotation omitted and alteration adopted). In other words, there can be no constitutionally protected interest in parole consideration without a constitutionally protected interest in parole release.

> The district court did not err in dismissing Young's due process claim arising from a delay in his parole consideration.

*Id.*; *see also Sandin*, 515 U.S. at 487 (concluding that the possibility that the plaintiff's confinement in disciplinary segregation would affect when he was ultimately released from prison was "simply too attenuated to invoke the procedural guarantees of the Due Process Clause.").

The Court should dismiss this claim.[14]

---

[14] *See also Thomas v. LeBlanc*, 846 F. App'x 282, 283 (5th Cir. 2021) ("Louisiana prisoners do not have a liberty interest in parole that is protected by the Due Process Clause[.]");*Whitley v. LeBlanc*, 853 F. App'x 953, 954 (5th Cir. 2021) ("[B]ecause he was not eligible for parole consideration under the applicable state law, Whitley cannot state a claim that he was deprived of a liberty interest in parole consideration."); *Farr v. Rodriguez*, 255 F. App'x 925, 926 (5th Cir.

**B. Administrative Segregation for 10-15 Days**

Plaintiff was in administrative segregation for 10-15 days. Plaintiff, however, neither describes the conditions in administrative segregation nor explains how the conditions he experienced differed from other routine prison conditions. In this respect, his claim is conclusory. *See Carmouche*, 2023 WL 5116377, at *2 (*quoting Luken*, 71 F.3d at 193) ("[G]enerally, 'administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest.'"); *Wilson v. Dill*, 220 F.3d 586 (5th Cir. 2000) (finding that without more, the plaintiff's allegation that he was placed in lockdown "without being charged with a violation of a disciplinary rule" did not implicate a cognizable liberty interest).

Further, Plaintiff's duration in administrative segregation was not excessive in degree. *See Sandin*, 515 U.S. at 486 (holding that thirty days in disciplinary segregation "did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction."); *Jeter v. Phillips*, 166 F.3d 341 (5th Cir. 1998) ("The sanction of twenty days of isolation/disciplinary detention, which lies at the root of the remaining charges, does not reflect the type of atypical, significant deprivation in which a state might create a liberty interest. It reflects only a change in the condition of confinement."); *Odneal v. Hinojosa*, 357 F. App'x 598, 598-99 (5th Cir. 2009) ("Odneal's punishments of 45 days of recreation restriction, 45 days of commissary restriction, and demotion in time-earning class" did not present atypical and significant deprivations); *Watkins v. Lnu*, 547 F. App'x 409, 410 (5th Cir. 2013) ("The district court did not err in

---

2007) (finding that the plaintiff was not deprived of a liberty interest because although he "alleged that he was denied parole eligibility because of his classification . . . . [he] was not automatically ineligible for parole, which is determined under [Texas] state law by the offense of conviction and the discretion of the parole panel.").

16

concluding that Watkins's 14 days of disciplinary segregation and three-month loss of commissary, visitation, and telephone privileges did not implicate a liberty interest protected by the Due Process Clause.").

### C. Rehabilitative Programs and Trustee Status

Plaintiff mentions that after he was transferred to CPCC, officials there used the alleged "fraudulent disciplinary reports/unusual occurrence reports" from RPDC to refuse him access to rehabilitative programs and a trustee position.  [doc. # 20, p. 21].  It is unclear if Plaintiff is seeking relief for these allegations or if these allegations are a part of his claim that he did not receive procedural due process.  If he does seek relief for these allegations, the allegations do not confer any additional plausibility on his claim.

Even assuming attenuated, collateral consequences of alleged false disciplinary reports could create a constitutionally protected property or liberty interest,[15] the consequences Plaintiff experienced were not 'atypical and significant hardships' in relation to the ordinary incidents of prison life.  In *Farr v. Rodriguez*, 255 F. App'x 925, 926 (5th Cir. 2007), the court opined that "lack of access to work and education programs" and denied parole eligibility did not implicate a liberty interest.  In *Lewis v. Landis*, 738 F. App'x 286, 287 (5th Cir. 2018) (*quoting Sandin*, 515 U.S. at 485-86), the court held that an inmate's removal from a trustee camp and reassignment to a field squad was not "'the type of atypical, significant deprivation in which a State might conceivably create a liberty interest' and, therefore, [did] not implicate due-process concerns." *See Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir.1995) (holding that the

---

[15] *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[S]peculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests.").

loss of a prison job did not implicate a prisoner's liberty interest even though the prisoner consequently lost the ability to automatically accrue good-time credits).

Even combining Plaintiff's denied parole, time in administrative segregation, and lack of access to rehabilitative programs, Plaintiff does not present extraordinary circumstances or allege atypical or significant hardships. He does not, therefore, state a plausible procedural due process claim.[16]

Accordingly, the Court should dismiss these claims.

**5. Conspiracy**

Plaintiff claims that Defendants Marvel, Austin, Show, and Doe conspired to issue him two disciplinary reports, falsely charge him with contraband, and withhold procedural due process. [doc. # 20, pp. 19, 33].

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'" *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (*quoting Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). "To plead a conspiracy under Section 1983, a plaintiff must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act,

---

[16] *See Palmer v. Cain*, 350 F. App'x 956, 957 (5th Cir. 2009) (finding that due process was not required because the appellant's 97 days in administrative segregation were not sufficiently atypical or significant); *Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding no claim where the prisoner "received 30 days' cell and commissary restriction (including loss of recreation and library privileges, as well as the ability to attend religious services), 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction from trustee class 4 to line class 1, and an increase of his custody level from minimum to medium."); *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (finding no claim where the prisoner was housed in a special tier for six months without visitation privileges).

and 2) an actual deprivation of constitutional rights." *Shine v. Jones*, 743 F. App'x 566, 568 (5th Cir. 2018). "Charges as to such conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or inference . . . trifles light as air . . . will suffice[.]" *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

Here, Plaintiff fails to plead an essential element of a conspiracy claim: he does not allege that that defendants agreed to commit an illegal act. At best, he alleges that Defendants Show and Marvel were aware that "Austin's disciplinary report was" false. [doc. # 20, p. 19]. But this threadbare allegation does not suffice: "[c]onclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019). "Plaintiffs who assert conspiracy claims under the civil rights statutes must plead the operative facts showing a prior illegal agreement, and bald allegations of an agreement do not suffice." *Dunsmore v. Kenyon*, 2022 WL 715490, at *1 (5th Cir. Mar. 9, 2022) (quoted source omitted) (concluding, where the plaintiff did not provide specific facts supporting his allegations that a defendant purposefully authored a report adverse to him "because she was controlled by the Texas Civil Commitment Office[,]" that such "speculative and conclusory allegations [were] insufficient[.]"); *see Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("[M]ore than a blanket of accusation is necessary to support a § 1983 claim.").

In addition, Plaintiff has not plausibly alleged a deprivation of his constitutional rights. He alleges that defendants conspired to deprive him of procedural due process for disciplinary charges and reports, but as explained above he does not plead a plausible procedural due process claim. "No deprivation, no § 1983 conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019); *Curtis*, 761 F. App'x at 306 ("Because Curtis's federal conspiracy claim cannot stand

without an underlying constitutional violation, it fails as well."); *Moore v. Grant*, 79 F. App'x 676, 677 (5th Cir. 2003).  Accordingly, the Court should dismiss these claims.

### 6. Retaliation

Plaintiff frames his removal from a vocational program as a retaliation claim, faulting Warden Miller and John Doe.  [doc. #s 20, p. 32; 25, p. 2].  He also claims that on April 23, 2021, Warden Miller and John Doe retaliated by transferring him from RPDC to CPCC "to prevent him from filing a grievance or possibly this action."  [doc. #s 20, pp. 25-26; 25, p. 2]. He adds that the defendants did not allow him to "check and or inventory the property that had been seized and or confiscated from him . . . ."  *Id.* at 25.  He also claims that Miller and Doe retaliated by transferring him "without access to his prison account," which he needed to purchase stamps and supplies to communicate with his co-counsel and file grievances.  [doc. # 25, p. 3].

To prevail on a retaliation claim, a plaintiff must prove: (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that but for the retaliatory motive, the complained of incident would not have occurred.  *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998).  Courts must "carefully scrutinize" retaliation claims to "assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).[17]

A plaintiff must produce direct evidence of motivation or allege a chronology of events

---

[17] "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.  Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  *Id.* (*quoting Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995). "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). With respect to the third prong above, "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

Here, even construing Plaintiff's pleadings liberally in his favor, he does not allege that defendants retaliated because he exercised a constitutional right. Moreover, Plaintiff neither produces direct evidence of motivation nor alleges a chronology of events from which retaliation may be plausibly inferred.[18] Overall, the retaliation aspects of the allegations are conclusory. The Court should dismiss these claims.

## 7. Removal from a Vocational Program

Plaintiff appears to fault defendants for removing him from vocational and rehabilitation programs. Plaintiff, however, does not have a constitutional right to participate in rehabilitation/educational classes, vocational classes, or classes to earn good time. *See McBride v. Powers*, 364 F. App'x 867, 870-71 (5th Cir. 2010) (holding that the plaintiff "failed to state a claim for violation of his equal protection or due process rights, as inmates have no constitutional right to participate in rehabilitative or educational programs while incarcerated."); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (holding that the "loss of the opportunity to earn good-time credits" is a "speculative, collateral consequence[]" of a prison administrative decision and does

---

[18] Plaintiff does not plead a "tight chain of events" between any predicate event and the alleged retaliatory acts. *See Petzold v. Rostollan*, 946 F.3d 242, 253 (5th Cir. 2019) ("There was a 'tight[] chain of events' between the predicate events and alleged retaliatory acts—ranging from less than an hour to almost a month.").

"not create [a] constitutionally protected liberty interest[].");  *Beck v. Lynaugh*, 842 F.2d 759, 762

(5th Cir. 1988) ("[A] state has no constitutional obligation to provide basic educational or

vocational training to prisoners.");  *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir.

1995) (holding that the loss of a prison job did not implicate the prisoner's liberty interest even

though the prisoner lost the ability to automatically accrue good-time credits).[19]

In addition, Plaintiff does not state a plausible conditions-of-confinement claim.  "[T]he

lack of a rehabilitative program does not by itself constitute cruel and unusual punishment . . .

.").  *Alberti v. Klevenhagen*, 790 F.2d 1220, 1228 (5th Cir. 1986).

Accordingly, the Court should dismiss these claims.

## 8. Access to Court

When Plaintiff arrived at CPCC, he lacked the items which were confiscated from him at

RPDC, as well as other "important legal documents [he] needed for" a state court criminal

proceeding.  [doc. # 20, pp. 27-28].  Faulting Defendants Marvel, Austin, Show, Doe, and Miller,

Plaintiff claims that the confiscation of his stamps prevented him from communicating with his

co-counsel, the courts, other legal agencies, friends, and family.  [doc. #s 20, p. 29; 25, pp. 1-2,

3].  He claims that the confiscation of his MP4 player prevented him from reviewing important

audio evidence "submitted by the State of Louisiana."  [doc. # 20, p. 29].  He also claims that he

missed three court dates because Defendants Doe, Show, and Marvel confiscated his legal

materials and personal property.  *Id.* at 30.  Finally, he alleges that "prison administrators ignored

a state trial court judge's order and recommendation to return and or retrieve [his] legal material

---

[19] *See generally Cobb v. Whittington*, 2016 WL 1019466, at *3 (W.D. La. Feb. 16, 2016), report
and recommendation adopted, 2016 WL 1057498 (W.D. La. Mar. 14, 2016) ("While prisoners
who are entitled to release on mandatory supervision have a protected liberty interest in
previously-earned good-time credits they are not constitutionally entitled to earn such credits.").

and books . . . ." *Id.* at 6.

To succeed on claim that a defendant violated a plaintiff's right to access the courts, the plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (*quoting Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here, Plaintiff alleges that because of defendants' actions: (1) he missed court dates but requested a continuance; (2) a state court judge denied his request to subpoena his legal materials; (3) he cannot "properly litigate existing open criminal and civil matters where [he has] suffered several adverse rulings." [doc. #s 20, pp. 29-30; 25, p. 2].

As to Plaintiff's "existing open criminal and civil matters[,]" he has not yet lost his cases. *See Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) ("[T]o make out a claim that his constitutional right of access to the courts has been violated, [a plaintiff] must have demonstrated that his position as a litigant was prejudiced by his denial of access to the courts."). Plaintiff has not identified "a remedy that is not otherwise available in another suit . . . ." *See Waller v. Hanlon*, 922 F.3d 590, 602 (5th Cir. 2019) (finding that the plaintiffs did not identify a remedy that is not otherwise available in another suit that may yet be brought because the plaintiffs were actively litigating their underlying claim, because it was "too early to say" that the plaintiffs'

underlying claim was compromised, and because the plaintiffs had yet to suffer a "concrete setback traceable to the defendants'" actions).[20]

As to Plaintiff's denied subpoena request, he does not allege that he lost a *claim* or was unable to obtain final relief because of any defendant's action or omission.

As to all Plaintiff's claimed injuries, he does not identify any specific claim, defense, or proceeding that he cannot presently prepare or file, that he could not prepare or file in the past, that he lost, or for which he could not or cannot obtain a remedy.[21]

The Court should dismiss these claims.

## 9. Ignoring Grievances

Plaintiff claims that Secretary LeBlanc ignores inmates' complaints.  [doc. # 20, p. 22]. He relatedly claims that Defendants Gilley and Miller either failed to train staff to answer grievances or created an "unspoken rule or custom to purposely ignore any and all inmate grievances . . . ."  *Id.* at 34, 35.

---

[20] "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

[21] Even assuming Plaintiff did plead prejudice, his claims with respect to his criminal proceedings would be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), which held that a successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.  A ruling that Plaintiff lost a criminal proceeding (i.e., was convicted) because of defendants' actions would necessarily imply the invalidity of the conviction.  *See Loden v. Hayes*, 208 F. App'x 356, 359 (5th Cir. 2006) ("[A]ny claim that a lack of legal materials affected his criminal trial is not cognizable in this § 1983 proceeding under *Heck v. Humphrey, supra.*"); *Bray v. Walker*, 84 F.3d 434 (5th Cir. 1996) (finding that *Heck* barred the plaintiff's claim "that his parole was revoked because he was denied access to a law library[.]"); *Ranson v. Thomas*, 2006 WL 2796458, at *2 (S.D. Tex. Sept. 27, 2006) (determining that if the plaintiff did miss a court date in his criminal proceeding and if "a hearing of any consequence did occur in his absence, this would imply the invalidity of the conviction under *Heck.*").

A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss Plaintiff's claims.

**10. Standing**

Plaintiff appears to seek relief on behalf of other prisoners. [doc. # 20, p. 4]. Plaintiff lacks standing to pursue this relief.

Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others. *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."). In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that "to

the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims."); *see Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan. 4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[22]

In addition, Plaintiff may not function as counsel for other prisoners. *See, e.g.*, *Wade v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis."). Parties can represent themselves or they can be represented by an attorney; a non-lawyer cannot represent them. *See Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (*citing Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authority)).

Here, the Court considers only the alleged harm that Plaintiff suffered. Accordingly, the Court should dismiss claims Plaintiff raises on behalf of other inmates.

## 11. State Claims

Plaintiff claims that Defendants Miller, Gilley, and LeBlanc "acted with negligence and or fraud" in violation of state law by "failing to properly supervise and or train their employees to": not write false and/or misleading disciplinary reports, secure inmates' seized property to prevent loss, afford inmates procedural due process, not act with malice and/or discrimination, know when to file a disciplinary report in an inmate's master prison file, and know when and

---

[22]  *See also Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . ."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider . . . whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

how to seize an inmate's property.  [doc. # 25, pp. 5-6].

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3).  In fact, this is the general practice.  *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.").  District courts have "wide discretion to dismiss state law claims" under Section 1367.  *Adams v. Fuller*, 2022 WL 17250191, at *1 (5th Cir. Nov. 28, 2022).

Under the interests of economy, convenience, fairness, and comity, the Court should dismiss any remaining state law claims without prejudice.[23, 24]

### **Recommendation**

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Chad Lightfoot's claims arising under the laws and Constitution of the United States be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims arising under state law be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for class certification be **DENIED AS MOOT**.

---

[23] *See Spell v. Edwards*, 2023 WL 2110889, at *1 (5th Cir. Feb. 17, 2023); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

[24] The limitations period is tolled for a minimum of 30 days after dismissal.  28 U.S.C. § 1367(d).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 28th day of September, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge